UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LARRY NOSCHKA,

        Plaintiff,                  CIV. S-02-2679

       v.

JO ANNE B. BARNHART,              Memorandum of Decision
Commissioner of Social
Security,

        Defendants.

—oOo—

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq.

Both parties moved for judgment on the record.

The supplemental security income program established by Title XVI of the Act provides benefits to disabled persons

without substantial resources and little income.  42 U.S.C. § 1383. To qualify, a claimant must establish inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner makes this assessment by a five-step analysis.  First, the claimant must not currently be working.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 416.920(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded.  20 C.F.R. § 416.920(d).  Fourth, if the claimant can do his past work benefits are denied.  20 C.F.R. § 416.920(e).  Fifth, if the claimant cannot do his past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded.  20 C.F.R. § 416.920(f).  The last two steps of the analysis are required by statute.  42 U.S.C. § 1382c(a)(3)(B).

////

Plaintiff applied for benefits in August 2000, at age 41 years, claiming disability due to "2 head [injuries before age 2], spinal stenosis in the upper [area of] spine, hypertension, and fast heart beat, high blood pressure with a slight enlargement of my heart," since May 7, 1997.[1]  Tr. 71.  Plaintiff also reported that he has pain in his "neck, shoulder, arm down to my hand" and "total numbness without warning" as a result of spinal stenosis.  Tr. 71.  He also reported "shortness of breath" from his hypertension and high blood pressure.  Tr. 71.

Plaintiff's claim was denied initially and upon reconsideration by the Social Security Administration.

In July 2002, after a hearing in June, an administrative law judge found that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; that plaintiff has "degenerative disc disease, spinal stenosis, hypertension, pedophilia, anxiety disorder, dependent personality disorder and borderline intellectual functioning, impairments that are severe," but not severe enough to meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that plaintiff's allegations regarding his limitations are not totally credible; that plaintiff has the residual functional capacity to perform a modified range of unskilled medium work

---

[1] On his disability report, plaintiff claims that the spinal impairments first bothered him in May 1997, and that he became unable to work because of them in August 1999.  Tr. 71. Plaintiff believes his head injuries caused brain damage, resulting in his lower than average I.Q. and need for special education classes.  Tr. 32.

activity which involves limited public contact; that plaintiff is unable to perform any of his past relevant work; that plaintiff is a "younger individual between the ages of 18 and 44"; that plaintiff has a "high school education;" that plaintiff has an unskilled work background; that although plaintiff's "non-exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.28, Appendix 1, Subpart P, Regulations No. 4 as a framework for decision-making and SSR 85-15, there are a significant number of jobs in the national economy that he could perform; and, that plaintiff was not under a disability as defined in the Social Security Act at any time through the date of this decision. Tr. 22.

This action follows the Appeals Council's October 2002 denial of plaintiff's request for review. Tr. 4-5.

This court must uphold the Commissioner's determination that a plaintiff is not disabled if the Commissioner applied the proper legal standards and if the Commissioner's findings are supported by substantial evidence. Orteza v. Shalala, 50 F.3d 748 (9th Cir. 1995). Substantial evidence is more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The court cannot affirm the Commissioner simply by isolating supporting evidence but must consider the entire record, weighing evidence that undermines as well as evidence that supports the Commissioner's decision. Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). If substantial

evidence supports administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987), and may be set aside only if the proper legal standards were not applied in weighing the evidence.  Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

Plaintiff claims the administrative law judge erred by (1) failing to develop the record with regard to the medical evidence; (2) giving inappropriate weight to the state agency physician's opinion; (3) failing to find that plaintiff's spinal impairment meets or equals Listing 1.05(c) entitled "Disorder of the Spine;"[2] and, (4) improperly using the Medical Vocational Guidelines as a framework to reach a finding of "not disabled" and to show the availability of other jobs instead of calling a vocational expert.

Plaintiff testified that he suffered two head injuries as a child, which may have resulted in brain damage and his below average I.Q.  Tr. 32, 169, 173, 183.  Plaintiff testified that he received special education throughout school, which he completed through grade 12.  Tr. 32, 77.

Plaintiff testified that he lives with his mother and rarely spends time with other people.  Tr. 33, 39.  He does, however, attend a Bible study held in his mother's home.  Tr. 88.

---

[2] Plaintiff's counsel refers to Listing 1.05(c), "Amputation" but appears to mean Listing 1.04(c), "Disorders of the Spine, lumbar spinal stenosis resulting in pseudoclaudication [...] and resulting in inability to ambulate effectively. 20 C.F.R., Pt. 404, Subpt. P, App. 1.

5

He also testified he goes shopping regularly. Tr. 39. He testified that other people make him "feel uneasy." Tr. 39. He testified that he gets stressed very easily and that his "psych meds" help a little bit but do not eliminate the problem. Tr. 40. Plaintiff testified that he takes "Buspar", which is indicated for "the management of anxiety disorders or the short-term relief of the symptoms of anxiety."[3]   Tr. 37.

The record indicates that plaintiff has been diagnosed with pedophilia. Tr. 174. He was incarcerated at the California Medical Facility from October 1997 to January 2001 for sex offenses against at least three of his minor nieces. Tr. 134. Plaintiff was himself sexually abused by his older brother, who forced him to have sex with a female cousin at age 14, then later forced him to have sex with his wife on a few occasions. Tr. 173. This brother is the father of the female victims. Tr. 173. Plaintiff committed the sex offenses against the victims at various times while they visited his trailer located in his parents' backyard. Tr. 173.

Plaintiff testified that he worked at a nursery from 1979 to 1991 doing heavy work delivering plants. Tr. 36. Plaintiff also testified that he worked as a janitor for seven months in 1995, but had to quit because his "health got too bad." Tr. 37.

////

////

---

[3]   <u>Physicians' Desk Reference</u>, 53rd Ed. (1999), at p. 823.

Plaintiff testified that his "worst" physical problems stem from spinal stenosis.[4] Tr. 33, 123. Plaintiff suffers from cervical[5] spinal stenosis. Tr. 123. Plaintiff testified that this condition causes him pain and other side effects. He testified that he cannot sit for more than fifteen minutes before he has to get up and change positions. Tr. 33-34. He testified that he experiences numbness in his right hand and often loses control of his grip. Tr. 34-35. He testified that he is in pain for 24 hours a day and that medication does not eliminate the pain. Tr. 37-38. He testified that he takes Motrin and Neurontin[6] for pain. Tr. 37. Plaintiff testified that certain physical activity, like yard work, aggravates his pain. Tr. 38.

First, plaintiff wrongly argues that the administrative law judge erred by failing to find that plaintiff's spinal impairment meets or equals Listing 1.05(c). Listing 1.05(c), 20 C.F.R., Ch. III, Part 404, Subpart P, Appendix 1, refers to "amputation of one hand and one lower extremity . . . ." Presumably, plaintiff means to reference Listing 1.04(c), 20 C.F.R., Ch. III, Part 404, Subpart P, Appendix 1, which lists "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable

---

[4] "Stenosis" is defined as "narrowing or stricture of a . . . canal." Dorland's Illustrated Medical Dictionary (27th Ed. 1988), at p. 1579.

[5] "Cervical" pertains to the neck" Dorland's, at p. 307.

[6] "Neurontin" is indicated for management of postherpetic neuralgia in adults. Physicians' Desk Reference, 59th Ed. (2005), at p. 2590.

7

imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00(B)(2)(b).[7]"  Even so, this listing refers to "lumbar[8] spinal stenosis" not cervical spinal stenosis.  Plaintiff alleges and the record shows no lumbar problems.  Furthermore, plaintiff's spinal stenosis has not resulted in "pseudoclaudication."[9]  Accordingly, plaintiff's impairment does not meet Listing 1.04(c).

    The Commissioner is required to find medical equivalence to a listed impairment if a claimant's "medical findings are at least equal in severity and duration to the listed findings."  20 C.F.R. § 416.926(a).  The Commissioner must compare the claimant's "symptoms, signs and laboratory findings," as set forth in the medical evidence, "with the medical criteria shown for any listed impairment."  20 C.F.R. § 416.926(a); <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir.1990).  Equivalency can be established where either: (1) the claimant has an impairment described in the

---

[7] "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . ."  Listing 1.00(B)(2)(b), 20 C.F.R., Ch. III, Part 404, Subpart P, Appendix 1.

[8] "Lumbar" refers to the "part of the back between the thorax and the pelvis." <u>Dorland's</u>, at p. 956.

[9] "Pseudoclaudication" refers to an intermittent complex of symptoms characterized by absence of pain or discomfort in a limb when at rest, and the commencement of pain, tension and weakness after walking is begun, and intensification of the condition until walking becomes impossible.  <u>Dorland's</u>, at p. 343, 1377.

listings that does not exhibit all of the listing's medical findings or such findings are not of the requisite severity, provided "other medical findings related to [the] impairment ... are at least of equal medical significance;" or (2) the claimant has an impairment that is not described in the listings, or has a combination of impairments none of which meet or are medically equivalent to a listing, provided "the medical findings related to [the] impairment(s) are at least of equal medical significance to those of a listed impairment." 20 C.F.R. § 416.926(a)(1), (2).

The administrative law judge reviewed the record and found that no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment. Tr. 14.  The administrative law judge made this inquiry for both plaintiff's alleged mental and physical impairments.  As discussed above, plaintiff does not have an impairment described in the listings.  Further, his cervical spinal stenosis, by itself or in combination with his other alleged impairments, does not evidence any medical findings of equal medical significance to Listing 1.04(c).  For example, plaintiff's impairment has not resulted in psedoclaudication or any similar condition related to plaintiff's ability to "ambulate effectively."  Listing 1.04(c), 20 C.F.R., Ch. III, Part 404, Subpart P, Appendix 1.  In fact, plaintiff's testimony and the medical evidence point to pain in plaintiff's right arm and shoulder, not his legs.  Tr. 34, 117, 187.  Furthermore, he testifies that he is still able to use his arm for such activities as light housekeeping, shopping with his mom,

fishing, and yard work.  Tr. 34-36, 39. Accordingly, plaintiff's condition does not "equal" the Listing 1.04(c).

Next, plaintiff alleges that the administrative law judge erred by according more weight to the opinion of Dr. Julian R. Espino, M.D., a state agency examining physician, than to the opinion of Dr. Jeffrey Reiser, M.D., plaintiff's treating physician.  Plaintiff does not explain in what way he believes the administrative law judge failed in his duty to develop the record. Instead, he intertwines that contention with his contention that the administrative law judge accorded improper weight to Dr. Espino's opinion.  Accordingly, both contentions are treated as a single attack on the administrative law judge's weighing of the medical opinions.

The opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d at 1230 (citations omitted).  However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989). "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence;  it is then solely the province of the ALJ

to resolve the conflict." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir.1995), citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.1989)(quoting <u>Sprague</u>, 812 F.2d at 1230)).  Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner].  <u>Sample</u>, 694 F.2d at 642 [<u>Sample v. Schweiker</u>, 694 F.2d 639 (9th Cir. 1982)] (quoting <u>Waters v. Gardner</u>, 452 F.2d 855, 858, n. 7 (9th Cir. 1971))."  <u>Morgan v. Apfel</u>, 169 F.3d 595, 601 (9th Cir. 1999).

The administrative law judge applied the correct legal standard.  He pointed to specific evidence provided by Dr. Espino who examined plaintiff and found that symptoms of pain and numbness were not reproduced.  Tr. 161.  Dr. Espino found "there is no evidence of muscle atrophy, motor weakness, sensory deficit or abnormal reflexes."  Tr. 161.  He further found that plaintiff "has a normal range of motion for all joints including spine."  Tr. 161.  Dr. Espino conducted a thorough examination of plaintiff, examining his neck, chest, pulmonary system, abdomen, skin, and extremities.  Tr. 158.  His notes indicate that he tested the flexion, extension and rotation of plaintiff's upper and lower spine, legs, shoulders, elbows, wrists, hips and knees, and found all to be normal.  Tr. 159-60.  Furthermore, he checked for tenderness in the spine, and examined plaintiff's radiological reports, finding only mild degenerative changes in plaintiff's shoulder.  Tr. 159-60.  By stark contrast, Dr. Reiser's opinion consists of short answers to a residual functional capacity

questionnaire, unsupported by any independent clinical findings. Tr. 187-92.  Furthermore, the record contains no treatment notes from Dr. Reiser, even though he claims to have treated plaintiff over the "past 12 months."  Tr. 187.

Accordingly, the administrative law judge appropriately relied on Dr. Espino's findings that "symptoms were not reproduced on physical examination" to discredit plaintiff and to reject Dr. Reiser's "opinion."

Plaintiff's contention that the administrative law judge erred by using the Medical Vocational Guidelines as a framework for finding plaintiff not disabled and to show the availability of other jobs is without merit.  Plaintiff wrongly states that the administrative law judge found "the Medical Vocational Guidelines may be used since there are no non-exertional limitations." Rather, the administrative law judge found plaintiff had two non-exertional limitations: restriction to unskilled work tasks and limited public contact.  Tr. 21.

Plaintiff alleges several other non-exertional limitations, including possible absenteeism, inability to deal with stresses, plaintiff's borderline range of intellectual functioning, his need to alternate standing and sitting, and limited use with reaching, grasping, handling, or fingering.

However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the Medical Vocational Guidelines.  <u>Desrosiers v. Sec'y of Health and Human Services</u>, 846 F.2d 573, 577 (9th Cir. 1988) (Pregerson, J.,

concurring).  The administrative law judge should first determine if the alleged non-exertional limitations significantly limit the range of work permitted by his exertional limitations.  Id.

Here, the administrative law judge did just that.  He considered plaintiff's possible absenteeism and his ability to handle stress, and relied on the opinion of psychiatrist Harinder S. Auluck, M.D., to conclude that these did not constitute significant impairments.  Dr. Auluck examined plaintiff and determined he "should be able to accept instructions from his supervisors and engage in limited interaction with co-workers and members of the public."  Tr. 154.  The administrative law judge relied on Dr. Auluck's opinion who found that plaintiff had only moderate limitations with regard to his ability to maintain regular attendance and handle stress.  Tr. 15.

With regard to plaintiff's intelligence, the administrative law judge relied on the opinion of clinical psychologist, Eugene P. Roeder, Ph.D., who tested plaintiff and placed him in the borderline mentally defective range based on scores that reflected "a generalized intellectual weakness rather than any specific areas of impairment." Tr. 16.  Dr. Roeder also opined that individuals with scores like plaintiffs are able to assume most adult responsibilities.  Substantial other evidence supports that conclusion.  The administrative law judge considered plaintiff's daily activities and found only mild limitations, noting that he prepares food, manages his own money, cleans his bathroom, does light housework, drives a car, enjoys outdoor

activities, goes fishing, and watches the news, among other things.  Tr. 15.  Further, plaintiff's mother's testimony in finding that plaintiff has little trouble with repetitive tasks and can handle his own money.  Tr. 15.

The administrative law judge also considered the opinions of two other doctors to find that plaintiff's lower than average intelligence did not significantly impact his ability to work.  The administrative law judge cited the opinion of psychologist Phyllis Williamson, Pd.D., who determined that plaintiff has the ability to function independently and that his limitations are due to his dependency on his family.  He also cited the opinion of Sidney K. Nelson, Pd.D., who assessed plaintiff to have a Global Assessment of Functioning ("GAF") score of 60, which is indicative of only moderate symptoms of social and occupational impairment.  The administrative law judge properly discredited plaintiff's lower GAF scores, noting that they were assessed while plaintiff was incarcerated and suffering from marked anxiety and depression.  Tr. 17.

Finally, the administrative law judge also considered plaintiff's alleged limitations with grasping and reaching and alternating standing and sitting, and properly determined that they do not significantly impact plaintiff's exertional abilities.  The administrative law judge properly relied on substantial evidence in the record concerning plaintiff's abilities (e.g., fishing and cleaning the bathroom), and the medical observations and opinion of Dr. Espino, as discussed above.

Given the administrative law judge's conclusions concerning plaintiff's non-exertional limitations, it was not error to apply the Medical Vocational Guidelines to find that plaintiff's occupational base would not be significantly eroded. The Medical Vocational Guidelines may be used as a framework for considering a claimant's work capability even when non-exertional limitations are present. See Social Security Ruling 85-15. The Guidelines may be also be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[10] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc).

Accordingly, the administrative law judge did not err by finding that plaintiff's alleged non-exertional impairments were not significant enough to preclude application of the Medical Vocational Guidelines.

For the foregoing reasons the decision is affirmed.

Dated: May 9, 2005.

    /s/ Peter A. Nowinski
    PETER A. NOWINSKI
    Magistrate Judge

---

[10] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).